UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAX MARGULIS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:14-cv-01131-JAR |
| SURREY VACATION RESORTS, INC., d/b/a GRAND CROWNE RESORTS, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 64.) The matter is fully briefed and ready for disposition. For the reasons stated herein, the motion will be denied.

### BACKGROUND

This case is filed pursuant to the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227) (the "TCPA"). Plaintiff alleges that Defendant Surrey Vacation Resorts, Inc., used an automatic dialer to make a telemarketing call to Plaintiff, without Plaintiff's prior consent. Plaintiff recorded the call in question. He seeks statutory damages pursuant to the TCPA. In the alternative, he claims a violation of the TCPA rooted in negligence. He also asserts counts for injunctive and declaratory relief.

The evidence,[1] construed in Plaintiff's favor, shows the following. Plaintiff complains that on June 18, 2013, Defendant, through its agents, called Plaintiff's cellular telephone number,

---

[1] Plaintiff objects that Defendant's statement of material facts fails to comply with the Court's local rules and should be stricken. The Court is satisfied that both parties have presented the facts in a manner sufficient for the Court to adjudicate the merits of the issues presented.

1

314-303-7470, based in St. Louis County, Missouri (the "Surrey call"). During the Surrey call, an agent for Defendant informed Plaintiff about vacation options in Branson, Missouri, and ultimately attempted to sell Plaintiff a travel package. Plaintiff expressed some interest in the information being offered and repeatedly extended the Surrey call by asking questions about the offered packages. Thus, the Surrey call lasted a total of some fourteen minutes. Toward the end of the Surrey call, Plaintiff made attempts to find out the name of the company that had placed the call, and suggested to the agent that he was on a "do-not-call" list. Plaintiff was finally transferred to a supervisor and demanded that he not be contacted again. Plaintiff recorded the call in its entirety.

Plaintiff alleges the call was made using an automated telephone dialing system ("ATDS"), a fact that Plaintiff purportedly deduced from the "significant delay after Plaintiff answered the call before Defendant's agent joined the conversation." (Doc. No. 1 at 1.) In his deposition, Plaintiff testified that his twenty years of experience with TCPA litigation allowed him to conclude, based on practice in the industry, that the significant delay at the beginning of the call was indicative of the use of an ATDS. It is undisputed that Surrey's telemarketing dialing system, the Liberation 6000, is capable of predictive dialing. Bradley Dep., Jan. 25, 2016, 57:16-25, 58:1-2.

In a signed affidavit, David Cope, general counsel for Surrey, testified that Surrey obtained the phone number on which Plaintiff was called from another company, who acquired Plaintiff's number from an "in-bound survey"—that is, one wherein the consumer called to participate in the survey, rather than being called to participate in the survey. (Doc. No. 65-2.) The subscribing telephone number was identified in Surrey's files as belonging to a "George Larson." Those files, a part of the record before the Court, also indicate that in or around August

of 2012, a consumer by that name provided consent, via participation in a consumer survey, to be contacted at the phone number 314-303-7470 regarding the sale and promotion of travel goods and services.

During the duration of the litigation, Surrey proffered that at some point, the phone number must have been transferred from George Larson to Plaintiff. At his deposition on November 11, 2015, however, Plaintiff admitted that he routinely uses the fake name "George Larson" when engaging in telemarketing surveys and calls.

Although Plaintiff testified that he "had never given permission" to be contacted (Margulis Dep., November 11, 2015, 19:4), he admitted to filling out certain surveys by phone. Plaintiff admitted that he did not believe Surrey was the initial entity that contacted him; instead, he testified that he believed Surrey acquired his information from some unknown third party. Plaintiff's deposition testimony was as follows:

> Q [W]ho provided the lead in this case?
> A I forget the name of the company. There was a company that provided this name and phone number to Surrey. And I believe from the discovery that I've looked over they were not the ones that took the survey, someone else provided that to them.

Margulis Dep., 31:11-16. Plaintiff further testified:

> Q How do you think that company associated the name George Larson with your phone number?
> A From the survey call that was made to that cell number.
> Q And did you participate in that survey?
> A Yeah.
> Q And did you give them your – the name George Larson?
> A Yes.
> Q Did you give them your cell phone number?
> A No. They called and had the cell phone number. I don't give out my cell phone number except probably to personal acquaintances and certain attorneys. I don't even give it to the attorneys I deal with.

Margulis Dep., 33:2-15.

Surrey argues that this first, original call made to Plaintiff by the lead-generating company (the "third-party call"), wherein Plaintiff gave the name George Larson, may have been in violation of the TCPA—but that the later Surrey call was made with Plaintiff's consent, which Plaintiff gave in the third-party call. Surrey also argues that if it had known at the outset of the litigation that Plaintiff Max Margulis was and is George Larson, it could have quickly moved for summary judgment based on the dispositive defense that Larson had given permission to Surrey to contact the phone number in question. Therefore, Surrey asks the Court not only to enter summary judgment, but to award Surrey its costs, expenses, and attorneys' fees incurred in defense of this suit.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In passing on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion, and give that party the benefit of any inference that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). To survive a motion for summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v.

Unity Health Sys., Inc., 348 F.3d 732, 733–34 (8th Cir. 2003). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526–27 (8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." Kountze ex rel. v. Hitchcock Foundation v. Gaines, 2008 WL 2609197, at *3 (8th Cir. 2008). "'Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 872–73 (8th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Thus, Plaintiff, even though the non-moving party for summary-judgment purposes, "must still 'present [ ] evidence sufficiently supporting the disputed material facts [such] that a reasonable jury could return a verdict in [his] favor.'" Pope v. ESA Servs,, Inc., 406 F.3d 1001–1003–04 (8th Cir. 2005) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48.

## DISCUSSION

*Plaintiff's Individual Claim*

Under the TCPA, it is unlawful to initiate any telephone call to any to any telephone number assigned to a cellular telephone service, using an artificial or prerecorded voice to deliver a message without the prior express consent[2] of the called party, unless the call is

---

[2] In 2012, the FCC issued a new rule requiring businesses to obtain "prior express written consent" before placing telemarketing calls. 47 C.F.R. § 64.1200 (a)(3). This 2012 FCC Order took effect on October 16, 2013. See Soular v. N. Tier Energy LP, No. 15-CV-556-SRN/LIB,

initiated for emergency purposes or is exempted by the Federal Communications Commission ("FCC"). 47 U.S.C. § 227(b)(1)(A)(iii). There is no violation of the TCPA if the called party provided his or her express consent to receive calls on his or her cellular phone. Id. The FCC has clarified what constitutes "express consent" under the TCPA pursuant to its authority to create rules and regulations implementing the TCPA. See 47 U.S.C. § 227(b)(2). The FCC has explained:

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

In re Rules & Regs. Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8769 ¶ 31 (Oct. 16, 1992). Thus, a telemarketer does not violate the TCPA "by calling a number which was provided as one at which the called party wishes to be reached." Id. Express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which a defendant bears the burden of proof. See, e.g., Elkins v. Medco Health Sols., Inc., No. 4:12CV2141 TIA, 2014 WL 1663406, at *6 (E.D. Mo. Apr. 25, 2014).

    The Court acknowledges that Defendant has offered evidence that Surrey, or the company from which Surrey obtained Plaintiff's number, obtained Plaintiff's consent to contact him. This evidence includes the business records submitted by Defendant, along with David Cope's supporting affidavit. However, this evidence is not uncontroverted, but rather is refuted by other evidence of record. Defendant's evidence is also subject to inferences in order to support Defendant's proffered conclusion that Plaintiff provided consent to be contacted, which

---

2015 WL 5024786, at *7 (D. Minn. Aug. 25, 2015). Because the alleged call in the instant matter occurred in June of 2013, the new rule is not at issue.

are not drawn in the movant's favor at the summary judgment phase. Therefore, Defendants have not proven, as a matter of law, that Plaintiff consented to the telephone call he received, and the motion for summary judgment will be properly denied.

Plaintiff has undermined the validity of the Cope affidavit by arguing that it was not made on personal knowledge, and directs the Court to Federal Rule 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."). The Court does not doubt that Mr. Cope, in his role as a high-level Surrey employee, has the personal knowledge necessary to interpret records kept by Surrey in the ordinary course of business. However, the evidence before the Court suggests that, if Plaintiff ever gave consent to be contacted, he did not give it to Surrey itself but to the third-party, lead-generating entity. The Court cannot infer that David Cope, as a Surrey employee, is also enabled to interpret the business records of the lead-generating company.

Even if the Court did consider Cope's testimony authoritative, it does not establish, as an uncontroverted matter of fact, that Plaintiff actually offered his consent to be contacted. For example, the record suggests that Surrey purchased the "lead" information, which included Plaintiff's number, from a certain broker, Mark McLean, and a firm by the name of Market Approach. Cope testified that Plaintiff expressly consented to receiving telemarketing calls when he was contacted by the lead generator. But elsewhere in Cope's deposition, he interprets communications from McLean and Market Approach as indicating that, while the firm did provide some "opt-in" telephone numbers, Plaintiff's was *not* an "opt-in" number. Cope Dep., October 15, 2015, 44:12-20. Also problematic is Cope's admission that testimony about the source of Plaintiff's number is "all speculation. I'm going on what I was told by Mr. McLean." Cope Dep., 35:7-8.

7

At least some additional objective evidence controverts the purported fact that Plaintiff supplied his consent to the lead-generating entity. For example, e-mail messages in the record suggest that Jordan Karlick, a representative of the original lead generator from which Market Approach may have obtained the number, could not provide solid testimony that the number was obtained by consent. Instead, Karlick affirmatively declined to sign an affidavit saying as much. (Doc. No. 71-13.)

Finally, Plaintiff's own testimony suggests that Plaintiff may not have given his phone number to Surrey, and therefore did not consent to Surrey's telemarketing call. Margulis Dep., 33:11-15. In Defendant's deposition of Plaintiff, Plaintiff testified to the following:

> Q: Did you give them your cell phone number?
> A: No. They called and had the cell phone number. I don't give out my cell phone number except probably to personal acquaintances and certain attorneys. I don't even give it to all the attorneys I deal with.
> Q: And at the time you participated in the survey was there any sort of question asked of you as to press a certain button to receive communications from that company or from Surrey?
> A: No. Surrey wasn't even mentioned in the survey.

Id. Even if this testimony is considered self-serving and given minimal weight, it is nonetheless evidence of record that creates a factual issue, improper for resolution on summary judgment. Because Defendant cannot prove as a matter of law that the original third party call resulted in Plaintiff's express consent to be contacted again, it cannot prove that the Surrey call was made with consent. Again, the Court construes the record in favor of the nonmoving party; on the record before the Court, Defendant has failed to supply uncontroverted evidence to show it obtained prior express consent.

Defendant has also failed to introduce uncontroverted evidence that it did not use an ATDS. Plaintiff's own sworn testimony provides some evidence—however tenuous—that an ATDS was used. Moreover, Surrey's corporate representative does not testify definitively that

8

no ATDS was utilized during the call campaign that included Plaintiff's number; instead, he concedes that the dialing unit had the capability to perform autodialing (Bradley Dep., 57:16-25, 58:1-2), and while he believed the unit was used in one of two ways that required human intervention, he did not specifically remember what method was used to place any calls to Plaintiff's number (Bradley Dep., 109:10-12.). Based on this vague, inconclusive testimony, the Court cannot find, as a matter of law, that no reasonable juror might conclude that an ATDS was used. "Because there is a genuine issue of material fact as to whether" Defendant used an ATDS, Defendant's motion for summary judgment must be denied." See Ploch v. FirstSource Advantage LLC, No. 4:12-CV-310-JAR, 2012 WL 5384876, at *5 (E.D. Mo. Nov. 1, 2012).

In sum, Plaintiff has introduced facts sufficient to support a reasonable finding that he did not consent to Surrey's call, and that the call was made using an ATDS. Defendant repeatedly invokes Plaintiff's use of a false name as purported evidence of bad faith, and even suggests that Plaintiff's use of the name George Larson in a previous communication with Defendant summarily proves that Plaintiff, speaking as George Larson, provided consent to be contacted at the number in question. But the Court does not, at the summary judgment phase, ignore evidence of record simply because Plaintiff utilized a false name, and neither does it infer that Plaintiff must have provided consent under that false name. Those inferences may be drawn by a jury—but they cannot be adopted by the Court at the summary judgment phase, particularly when competing evidence exists in the record. Thus, making all justifiable inferences in favor of the nonmoving party, the Court concludes that summary adjudication is not appropriate.

*Plaintiff's Class Claims*

Although the Court will deny Defendant's motion for summary judgment on Plaintiff's individual claim, the Court finds that these factual disputes raise serious questions regarding the named Plaintiff's ability to serve as a class representative. The Court will allow the parties to submit

briefing on whether the class proposed by Plaintiff can be properly certified, and whether Plaintiff is positioned to serve as a class representative. The findings herein suggest that Plaintiff may not be well-positioned to serve as class representative in light of the presumably unique issues and defenses that could exist with regard to Plaintiff's claims.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 64) is **DENIED**. Within **seven (7) days of this Order**, the parties shall submit a joint proposed schedule for any discovery or briefing with regard to Plaintiff's ability to serve as class representative.

Dated this 4th day of August, 2016.

                                                    _____
                                                    **JOHN A. ROSS**
                                                    **UNITED STATES DISTRICT JUDGE**